# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARQUISE DEANGELO LOFTIS, | Case No.  1:22-cv-01266-BAM (PC) |
| Plaintiff, | SCREENING ORDER GRANTING PLAINTIFF LEAVE TO FILE AN AMENDED COMPLAINT |
| v. | |
| ARISCO, *et al.*, | ECF No. 1 |
| Defendants. | **THIRTY (30) DAY DEAD-LINE** |

Plaintiff Marquise DeAngelo Loftis ("Plaintiff") is a state prisoner proceeding *pro se* in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff has paid the filing fee.  Plaintiff's complaint, filed on September 28, 2022, is currently before he Court for screening. (ECF No. 1.)

## I.      Screening Requirement and Standard

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell*

1    *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as

2    true, courts "are not required to indulge unwarranted inferences."  *Doe I v. Wal-Mart Stores, Inc.*,

3    572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

4           To survive screening, Plaintiff's claims must be facially plausible, which requires

5    sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable

6    for the misconduct alleged.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret*

7    *Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully

8    is not sufficient, and mere consistency with liability falls short of satisfying the plausibility

9    standard.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

10          **II.     Plaintiff's Allegations**

11          Plaintiff is currently housed at the R.J. Donovan Correctional Facility in San Diego,

12   California.  Plaintiff alleges the events in this action arose while Plaintiff was housed at

13   California State Prison in Corcoran, California ("Corcoran").  Plaintiff names the following

14   defendants: (1) A. Arisco, Investigative Services Unit, (2) E. Garza, Sergeant, (3) R. Montano,

15   Lieutenant, (4) R. Talsa, Associate Warden, (5) D. Sanchez, Captain, (7) Tienda, correctional

16   officer, (8) Alvarez, psych tech, IC, (9) Diaz, correctional officer, IC, (10) Rosales, correctional

17   officer, IC, (11) Navarro, sergeant, IC, (12) Vu, psychologist, IC, (13) Lewis, registered nurse,

18   IC, (14) J. Scalia, correctional officer, IC, (15) J. Perez, counselor, IC, (16) M. Oliveira, admin.,

19   IC, (17) T. Dunn, admin, IC, (18) Chand, psychologist, (19) Roacha, correctional officer, IC, (20)

20   White, correctional officer, IC, (21) Hernandez, correctional officer, IC, (22) Acosta, correctional

21   officer, IC, (23) E. Magallanes, LT, IC, (24) T. Chao, correctional officer, IC, (25) A. Rodriguez,

22   psych tech., IC, (26) P. Herleman, sergeant, IC, (27) Rakash, psychologist, IC, and (28) Moreno,

23   correctional officer, IC.  All defendants are sued in their individual capacities.

24          In claim 1, Plaintiff alleges a violation of due process of the Fourteenth Amendment.

25   Plaintiff is a participant in the Mental Health Service delivery system and is a *Coleman v. Wilson*

26   class member. On August 19, 2019, Plaintiff and his cellmate, Standford, were not getting along

27   and agreed to house separately.  However, Standford had a different idea and falsely accused

28   Plaintiff of sexual assault, as revenge for having to move. Because of the false allegation, an

2

investigation was initiated under the Prison Rape Elimination Act, by Arisco, Garza, the ISU sergeant, Montano and Talsa. At 11:30 pm, Plaintiff was taken from his cell where Arisco and Garza were waiting for him with recording devices.  They told Plaintiff that Standford said Plaintiff sexually assaulted him.  Plaintiff fully cooperated with the investigation and gave a recorded statement. Arisco told Plaintiff that Standford had made other false claims against cellmates but that they had to investigate but found it to be "bullshit." They said they knew Standford was lying but still had to put Plaintiff in administrative segregation. Plaintiff alleges that where officers know that the victim is known to lie to manipulate prison officials, the accused (Plaintiff) should be given less restrictive treatment.  Plaintiff could have been housed in medical isolation so he could keep his privileges of family contact until investigation was over, because Arisco, Garza, Montano and Talsa knew the investigation would lead to nothing.  They should have been given authority to decide if Plaintiff should be placed in Ad-Seg or less restrictive housing.

Since Plaintiff suffers from severe mental illness, special consideration should have been given to protect him from deterioration. It was apparent to defendants that Plaintiff needed a clinician because the regulations require it, Plaintiff requested it, and Plaintiff was in clear physical distress.  The defendant denied due process because they wanted to leave as it was 1 a.m.

Defendants denied Plaintiff written notice of the Ad-Seg placement notice and he did not receive actual notice until a week later.  Defendant falsely claims Plaintiff refused to sign the notice.  They prevented Plaintiff from being able to present witnesses for why his placement was unnecessary.  Plaintiff was in Ad-Seg from August 19 to November 4, 2019, and he was deteriorating. At the conclusion of the investigation, Plaintiff was cleared. As a result of three months detention in Ad-Seg, Plaintiff began having severe panic attacks, loss of appetite and loss of bodily functions, shaking, and became psychotic. Plaintiff was unable to have access to his mental health team on a daily basis. Defendants dragged the investigation out longer than necessary by not investigating witnesses.

On August 20, 2019, Defendant Sanchez did Plaintiff's Ad-Seg placement review to determine whether plaintiff should be retained or released from Ad-Seg. Sanchez was supposed to

provide written notice of the charges. Sanchez did not let Plaintiff provide witnesses and would have had Defendant Arisco repeat that Standford was a known liar.  Sanchez had the power to house Plaintiff in less restrictive housing.  When Sanchez arrived, Plaintiff was tied to a holding cage on suicide watch and waiting for a psychologist, and it was apparent Plaintiff was not going to survive Ad-Seg.

On August 27, 2019, Plaintiff had an Institution Classification Committee ("ICC") hearing before Perez, Dunn, Oliveira and Dr. Chand who stripped his due process rights.  Plaintiff did not have his due process rights of 72 hour advance notice, a chance to speak, a chance to present evidence and call witnesses, and evaluated by a mental health clinician.  Perez was the assigned counselor and representative, and Scalia was his staff assistant.  Neither met with Plaintiff before the hearing or gave him assistance, as required by the regulations.  Had they helped him, he would have been placed in restrictive housing.  They consciously decided not to do their jobs which impacted Plaintiffs.  They are assigned to Ad-Seg and know the effects it has on mentally ill inmates.

Chand was his assigned clinician to represent Plaintiff's mental needs at the ICC.  Chang did not meet with Plaintiff before the hearing, yet represented in his report that he had evaluated Plaintiff and found him stable and suitable to remain in Ad-Seg without decompensation.  It was a false report. Plaintiff's mental health needs were not presented, and no reasonable doctor would have allowed Plaintiff to remain in Ad-Seg, rather than medical isolation. Plaintiff's mental health file shows he decompensated in isolation and needs daily interaction with his mental health team.

Defendant Dunn was the chairperson of the ICC hearing.  He did not allow Plaintiff to present any documentary evidence, or witness.  Dunn and the other members did not allow Plaintiff to speak at the hearing except to ask his inmate number, then Dunn said he is retaining Plaintiff in Ad-Seg pending completion of the investigation hearing. Dunn retained Plaintiff in Ad-Seg for 90 days and Plaintiff was not able to earn good time credits for those 90 days. Plaintiff assumes that Dunn knew or should have known that Plaintiff was released from PIP just a month before he was placed in Ad-Seg and should have known that Plaintiff's mental health

1  could not remain stable in Ad-Seg for three months.

2      Oliveira was the recorder of the hearing, and he was supposed to allow Plaintiff to present

3  witnesses and evidence to be put on the record.  Dunn and the rest of the defendants violated

4  Plaintiff's due process right and violating procedural due process.

5      In claim 2, Plaintiff alleges violation of the Eighth Amendment.  On August 20, 2019,

6  while in Ad-Seg, Plaintiff began feeling like doing self-harm, because he was falsely accused of

7  sexual assault.  Plaintiff reported to Tienda that he was feeling suicidal and that Plaintiff felt like

8  hanging himself.  Tienda said "I don't see you hanging," and walked away.  During morning

9  medication pass, Plaintiff told Alvarez that he was suicidal and her response was that, "I'm

10 suicidal too," which delayed Plaintiff from getting treatment for his serious medical need. Alvarez

11 is a psychiatric technician and knows better than to deny a mentally ill inmate treatment.

12     Rosales came to do his security check and Plaintiff again reported that Plaintiff was

13 suicidal. Rosales smirked and kept walking and did not activate suicidal prevention protocols.

14 Plaintiff asked Tienda, Alvarez and Rosales, within the span of an hour, for help and all refused.

15 Plaintiff did not get to speak to a psychologist until 6 hours later.

16     A doctor or social worker came to speak to another inmate and Plaintiff told her how he

17 was feeling and she activated the suicide prevention protocols.  Plaintiff was removed from his

18 cell.  Rosales handcuffed him, and Plaintiff was taken out of the cell. Diaz attached a triangular

19 device to the handcuffs. The triangle has a 2 foot linked chain that connects to the handcuffs.  The

20 triangle is a way to stop an inmate from being resistive. Plaintiff was not resistive or combative

21 and the device should not have been used. Plaintiff believes the device is used to punish inmates

22 who report them.

23     Rosales and Diaz put Plaintiff in a holding cage and Diaz hooked the triangle to the cage

24 in a way that left Plaintiff's hands and arms elevated and forced him to face the back of the cage,

25 and Plaintiff was prevented from sitting down.  Plaintiff was in that position for four hours in

26 excruciating pain tortured by Rosales and Diaz. Throughout the four hours, Plaintiff was in pain

27 and every time Rosales, Tienda and Diaz conducted security checks, he asked them to take off the

28 handcuffs.  They laughed and just said, you are the one who is suicidal. Plaintiff told Defendant

5

1    Navarro and he blamed Plaintiff claims "what did you do to my officers." They acted

2    intentionally to inflict unnecessary pain.

3    Plaintiff told Alvarez during her medical pass, and she said she would not get involved

4    and it was between Plaintiff and the officers. When Sanchez arrived two hours into the ordeal, to

5    do the Ad-Seg review, Plaintiff told her Plaintiff was in a lot of pain and if she would remove the

6    triangle.  She told Plaintiff to tell Sergeant Navarro.  She left without doing anything.

7    After 4 hours of being chained, Dr. Wu and RN Lewis arrived.  They had treated Plaintiff

8    before and he reported that the offers were abusing Plaintiff and Plaintiff needed to be admitted

9    into the mental crisis bed.  Neither Dr. Wu or Lewis tried to get the triangle off or report the

10   defendants.

11   In claim 3, Plaintiff alleges supervisory liability. Plaintiff alleges that Sanchez and

12   Navarro are in supervisory positions which makes them responses for everything their

13   subordinates did to Plaintiff.  They also had personal involvement.

14   In Claim 4, Plaintiff alleges denial of mental health treatment. When Vu and Lewis

15   arrived to do their mental evaluation on Plaintiff, Plaintiff told them he could not handle the

16   stresses since being taken from his cell on August 19 and was feeling suicidal. Lewis examined

17   Plaintiff for injury and Vu admitted Plaintiff to the MHCB.

18   Vu reported to Navarro that he was going to move Plaintiff from Ad-Seg to the MHCB.

19   Navarro interfered with Plaintiff's mental health treatment because Navarro told Vu not to put

20   Plaintiff in MHCB because Plaintiff was just trying to get out of Ad-Seg. Vu told Plaintiff that

21   Plaintiff was going to remain in Ad-Seg.

22   Vu was deliberately indifferent to Plaintiff's serious medical need because he knows

23   Plaintiff would continue to deteriorate in Ad-Seg and have long term effects. Vu knew Plaintiff

24   was in real mental health crisis and would decompensate in Ad-Seg, and it was foreseeable that

25   Plaintiff would decompensate.  Plaintiff in fact decompensated in Ad-Seg and had debilitating

26   depression and anxiety and had auditory and visual hallucinations.  His illness caused him to self-

27   isolate and Plaintiff spent 24 hours in his cell, could not get himself up to shower, attend groups,

28   or go outside.

In claim 5, Plaintiff alleges excessive force in violation of the Eighth Amendment. Plaintiff told Navarro that Plaintiff was going to file a grievance against him.  Because of it, Navarro had his subordinates rough Plaintiff up.  Plaintiff was taken out of the cage, with Tienda on one side Diaz on the other and they "chicken winged" Plaintiff, where the officer interlock their arms under the shoulders of the person who is handcuffed and jack their arms up to make the person bend at the waist in pain.  Diaz told Plaintiff, "it will be hard to file a 602 with two broken hands."  It was meant to scare Plaintiff not to file a grievance on Navarro.

Tienda and Diaz walked Plaintiff to his cell. Tienda went in and took all of Plaintiff's bedding.  Plaintiff was cold so he began kicking the door and banging his head on the door and window for a long time.  Scalia came for a security check and told plaintiff that if he did not stop banging his head, the nurse would come and give Plaintiff a shot.

Scalia, Rosales, Tienda and Diaz converged on Plaintiff's cell.  Diaz told the Doe control tower officer to open Plaintiff's door.  When he did, Scalia stepped inside and grabbed plaintiff by the front of his shirt and punched Plaintiff's face, two times busting Plaintiff's nose.  Plaintiff asked for medical treatment and Scalia said that if Plaintiff wanted to report it that Scalia would claim an "emergency cell extraction."  Plaintiff alleges the other defendants stood by and did nothing was Plaintiff was attacked.

In claim 6, Plaintiff alleges retaliation in violation of the First Amendment. Defendants retaliated against Plaintiff for protected conduct of seeking mental health treatment and right to file a grievance.  Tienda, Alvarez and Rosales delayed Plaintiff from getting treatment.  Rosales and Diaz put a triangle on Plaintiff and tied him to a cage for hours, and the rest of the defendants failed to act to take it off.  "Navarro, Vu and Lewis denied Plaintiff treatment to stop him from seeking it in the future."  Navarro, Tienda and Diaz assaulted Plaintiff for telling Navarro that Plaintiff was going to file a grievance.

In claim 7, Plaintiff alleges deliberate indifference to serious medical need.  Dr. Rakash was Plaintiff's primary psychologist while house in Ad-Seg. For over a month, Dr. Rakash watched as Plaintiff deteriorated in Ad-Seg and did nothing to help him.  He could see that Plaintiff was not attending mental health groups or going outside or taking showers and was

spending 24 hours in his cell.  Plaintiff reported to Dr. Rakash Plaintiff's symptoms of low energy, loss of appetite, panic attack, auditory hallucinations.  Plaintiff asked Dr. Rakash for anti-psychotic medication because the current medication was not working.  Plaintiff had to submit a health care appeal forms on September 11, 2019 and October 20, 2019, and said he had overwhelming thoughts of death, panic attacks, uncontrolled shaking, eating and sleeping trouble. The RN referred Plaintiff to his mental health treatment team, which did nothing.

Dr. Rakash knew that Plaintiff had a serious mental issue and if untreated could cause damage.  Dr. Rakash acknowledged that Plaintiff needed to be hospitalized in the Psychiatric Inpatient Program, but Dr Rakash said Corcoran was short on mental health and it took a while to transfer inmates and that Plaintiff needed to stabilize before he could refer Plaintiff. Dr. Rakash watched Plaintiff's health decline and knew it was only going to get worse. He chose the course of treatment of watch, give encouraging words and do nothing.  This course was medically unacceptable and no reasonable clinician would use it by watching their patient decompensate in solitary confinement.  Rakash's deliberate indifference caused Plaintiff to try and kill himself.

In claim 8, Plaintiff alleges excessive force.  Plaintiff alleges that on November 8, 2019, Plaintiff had been awake for about three days having auditory and visual hallucinations.  Plaintiff sought psychiatric help and was turned away again.  Plaintiff tried to kill himself by hanging.  He blocked his cell door with boxes and a mattress and made a noose, tied it around his neck and tried to strangle himself.

Defendant White discovered Plaintiff hanging and without warning, he opened the door's tray slot and attempted to pepper spray Plaintiff. It backfired on him because Plaintiff had barricaded the door to prevent entry.  Plaintiff continued to hang himself.  White stuck is arm through the tray-slot, knocked down the barricade and began excessively dowsing Plaintiff with pepper spray.  The effects of the pepper spray caused burning and caused Plaintiff to stop trying to hang himself.  Plaintiff backed up to the tray slot and allowed White to handcuff Plaintiff.  The door was opened and the alarm was triggered.  "It was his intention to beat Plaintiff before medical and responding officers arrived." White pushed Plaintiff to the ground inside the cell, then jumped on Plaintiff and put his knee on his neck and bounced up and down to inflict

8

1   unnecessary pain on Plaintiff.  White took Plaintiff outside he cell.  Acosta put Plaintiff in a

2   headlock and Roacha grabbed Plaintiff's left arm, and they rammed Plaintiff's head into a wall

3   and body slammed him to the ground.  The all jumped on Plaintiff and began kneeing and

4   punching Plaintiff.  Hernandez was on Plaintiff's back with his knee dug in, which prevented

5   Plaintiff from getting up.

6   　　　They then picked Plaintiff up.  Plaintiff could see responding officers downstairs,

7   including Magallanes and Herleman watching but not acting.  Moreno and Hernandez escorted

8   Plaintiff towards the stairs.  Moreno punched Plaintiff several times on the side of his face.  This

9   was done with Herleman, Magallanes, Rodriguez and other responding officer watching but not

10  acting to protect Plaintiff.

11  　　　Hernandez, Acosta, Moreno then chicken winged Plaintiff and dragged him with leg irons

12  on and intentionally knocked Plaintiff's head into the door frame.  They rammed him into a

13  holding cage.

14  　　　Herleman and Magallanes falsified a Rules Violation Report against Plaintiff charging

15  him with battery on a peace officer.  Rodriguez falsely reported that Plaintiff refused to allow the

16  pepper spray to be washed off.  Plaintiff could not wash it off until the next day, with the spraying

17  burning all night.

18  　　　In claim 9, Plaintiff alleges violation of Equal Protection of the Fourteenth Amendment.

19  Plaintiff alleges that Tienda, Diaz, Scalia, White, Hernandez, and Moreno "were more prone to

20  violently attack African-American inmates more than they attacked white or Hispanic inmates."

21  Plaintiff alleges that the assaults that the witnesses were racially motivated.  Hispanic inmates are

22  treated more respectfully.  All defendants have a conscious bias toward Africa American inmates

23  by the abuse that happens and falsely charging African American inmates with crimes like battery

24  after the inmate had been attacked.

25  　　　In claim 10, Plaintiff alleges First Amendment Retaliation.  On about November 6 or 7,

26  2019, Diaz and H. Hernandez came to MHCB to serve Plaintiff with the RVR.  Diaz threatened

27  violence against Plaintiff for being in the MHCB and threatened to steal Plaintiff's property.

28  Seeking and receiving mental and medical health treatment is protected conduct and defendant

attempted to chill Plaintiff by threatening him for being successful in getting out of Ad-Seg and into MHCB.

As remedies, Plaintiff seeks compensatory and punitive damages.

### III.   Discussion

Plaintiff's complaint fails to comply with Federal Rules of Civil Procedure 8, 18 and 20 and fails to state a cognizable claim under 42 U.S.C. § 1983.  Because he is proceeding pro se, Plaintiff will be granted leave to amend his complaint to the extent that he can do so in good faith. To assist Plaintiff, the Court provides the pleading and legal standards that appear relevant to his claims.

### A.   Federal Rule of Civil Procedure 8

Pursuant to Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (citation omitted).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  While factual allegations are accepted as true, legal conclusions are not.  *Id.*; *see also Twombly*, 550 U.S. at 556–57; *Moss*, 572 F.3d at 969.

Here, Plaintiff's complaint is not short.  It is not a plain statement of his claims showing that he is entitled to relief.  Many of Plaintiff's allegations are conclusory do not state what happened, when it happened, or which defendant was involved.  He often refers to "defendants" without specifying which defendant. General assertions regarding who knew what about Plaintiff are not sufficient, and Plaintiff may not merely state the elements of a cause of action without providing any factual allegations in support of his claims.  His allegations that "nothing was done" for medical care are insufficient.  Further, Plaintiff improperly joins claims and the jumble of references are confusing. If Plaintiff files an amended complaint, it should be a short and plain statement of his claims, and must include factual allegations identifying what happened, when it

happened and who was involved. Fed. R. Civ. P. 8.

**B.       Federal Rules of Civil Procedure 18 and 20**

Plaintiff may not bring unrelated claims against unrelated parties in a single action.  Fed. R. Civ. P. 18(a), 20(a)(2); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *Mackey v. Price*, 2020 WL 7319420, at *3–4 (E.D. Cal. Dec. 11, 2020), report and recommendation adopted, 2021 WL 843462 (E.D. Cal. Mar. 5, 2021). Plaintiff may bring a claim against multiple defendants so long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are commons questions of law or fact.  Fed. R. Civ. P. 20(a)(2); *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997).  The "same transaction" requirement refers to similarity in the factual background of a claim.  *Id.* at 1349.  Only if the defendants are properly joined under Rule 20(a) will the Court review the other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party.

Plaintiff may not raise different claims against different defendants in a single action. For instance, Plaintiff may not state unrelated claims for his Ad-Seg housing, excessive force, conditions of confinement (the triangle and cage placement), false reports, medical care and deliberate indifference while in Ad-Seg and many other claims.  Unrelated claims involving multiple defendants belong in different suits.  The complaint is a series of multiple incidents which happened while Plaintiff was housed in Ad-Seg. Merely because Plaintiff was housed in Ad-Seg when the incidents occurred does not make every injury or incident related.  Plaintiff will have to decide which claims he wishes to pursue and if unrelated claims are joined, the Court will select which cognizable claim may proceed. Separate unrelated claims must be filed in separate lawsuits.

**C.       Supervisory Liability**

To the extent Plaintiff seeks to hold any defendant liable based solely upon their supervisory role, he may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676–77; *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City*

*of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (citation and quotation marks omitted); *accord Lemire v. Cal. Dep't of Corrs. & Rehab.*, 726 F.3d 1062, 1074–75 (9th Cir. 2013); *Lacey v. Maricopa Cty.,* 693 F.3d 896, 915–16 (9th Cir. 2012) (en banc). "Under the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." *Crowley*, 734 F.3d at 977 (citing *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)) (internal quotation marks omitted).

Plaintiff names supervisory defendants.  In particular, Plaintiff alleges that Sanchez and Navarro are in supervisory positions, and alleges their positions make "them responsible for everything their subordinates did to Plaintiff."  Plaintiff alleges that they "knew" or "should have known" or "absolutely knew" about conditions. Plaintiff merely relies on these supervising Defendants' responsibilities to ensure the safety and health of the prisoners, but this claim is based on respondeat superior which is not cognizable under section 1983. *Iqbal*, 556 U.S. at 677. Such conclusory allegations are insufficient to state the causal link between such defendant and the claimed constitutional violation.

**D.    Failure to Investigate**

Plaintiff alleges the investigation into the false charges against him was slow and delayed.

To the extent Plaintiff alleges that Arisco, Garza, Montano and Talsa, or any other defendant, violated his rights for an inadequate or slow investigation, Plaintiff's claims are not a basis for a plausible §1983 claim. *Baker v. Beam*, 2019 WL 1455321, at *6 (E.D. Cal. 2019); *Drake v. Ibal*, No. 1:22-CV-01149 BAM PC, 2022 WL 18027808, at *8 (E.D. Cal. Dec. 30, 2022) (no claim for faulty investigation for removal of evidence from the investigative file). To the degree Plaintiff is trying to hold the individuals or others liable for an independent, unspecified constitutional violation based upon an allegedly inadequate investigation, there is no

such claim. *See Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985) (per curiam) ("[W]e can find no instance where the courts have recognized inadequate investigation as sufficient to state a civil rights claim unless there was another recognized constitutional right involved."); *Page v. Stanley*, 2013 WL 2456798, at *8–9 (C.D. Cal. June 5, 2013) (dismissing Section 1983 claim alleging that officers failed to conduct thorough investigation of plaintiff's complaints because plaintiff "had no constitutional right to any investigation of his citizen's complaint, much less a 'thorough' investigation or a particular outcome"); *Tirado v. Santiago*, No. 1:22-CV-00724 BAM PC, 2022 WL 4586294, at *5 (E.D. Cal. Sept. 29, 2022), report and recommendation adopted, No. 1:22-CV-00724 JLT BAM PC, 2022 WL 16748838 (E.D. Cal. Nov. 7, 2022) (no constitutional claim for failing to investigate an appeal).

### E.   Due Process - Ad-Seg Placement

A prisoner does not have a right to a particular classification or custody level under the Due Process Clause. *See Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007) (concluding California prisoner does not have liberty interest in residing at a level III prison as opposed to level IV prison).  Prisoners do not have a liberty interest in remaining housed in the general prison population. *Hernandez v. Constable*, 2020 WL 2145387, at *2 (E.D. Cal. Feb. 21, 2020), report and recommendation adopted, 2020 WL 2126893 (E.D. Cal. May 5, 2020) (citing *Smith v Noonan*, 992 F.3d 987, 989 (9th Cir. 1993); *McFarland v. Cassady*, 779 F.2d 1426, (9th Cir. 1986)). Accordingly, plaintiff does not have a liberty interest in being housed in any particular prison or to any particular classification.

"Typically, administrative segregation in and of itself does not implicate a protected liberty interest." *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003); *see also Sandin v. Connor*, 515 U.S. at 472, 486 (discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest.) "[W]hen prison officials initially determine whether a prisoner is to be segregated for administrative reasons due process only requires the following procedures: Prison officials must hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated. The prison officials must inform the prisoner of the charges against the prisoner or their reasons

13

for considering segregation. Prison officials must allow the prisoner to present his views." *Toussaint v. McCarthy*, 801 F.2d 1080, 1100-01 (9th Cir. 1986) (footnote omitted), abrogated on other grounds, *Sandin*, 515 U.S. 472.

Plaintiff alleges that because the charges were based on a known liar, he should have been place in less restrictive housing. But Plaintiff does not have a liberty interest to be housed in less restrictive housing. Plaintiff alleges he was informed of the charges and told why he was in Ad-Seg. Plaintiff has stated that within a week of being placed in administrative segregation, he received an ICC hearing in front of some of the defendants. Plaintiff may be able to state a cognizable claim but currently does not state a due process claim based on his classification housing.[1]  In addition, Plaintiff fails to state a cognizable claim against Chand or Oliveira as Due Process does not mandate administrative assistants require witnesses and evidence to be placed "on the record."

Due process requires that prison officials engage in some sort of periodic review of an inmate's confinement in segregation. *See Hewitt v. Helms*, 459 U.S. 460, 477 n.9, 103 S.Ct. 864, 74 L.Ed.2d 675; *Toussaint v. McCarthy*, 801 F.2d at 1101. These periodic reviews must be more than "meaningless gestures" to satisfy due process. *See Toussaint v. McCarthy*, 926 F.2d 800,

---

[1] Disciplinary segregation requires more process. Disciplinary segregation as punishment for violation of jail rules and regulations cannot be imposed without complying with the procedural requirements of *Wolff v. McDonnell*, 418 U.S. 539 (1974). "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff, 418 U.S. at 556 (1974). With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. *Id.* at 563-71. As long as the five minimum Wolff requirements are met, due process has been satisfied. *Walker v. Sumner*, 14 F.3d 1415, 1420 (9th Cir. 1994), abrogated on other grounds by *Sandin v. Connor*, 515 U.S. 472 (1995). In addition, "some evidence" must support the decision of the hearing officer, *Superintendent v. Hill*, 472 U.S. 445, 455 (1985), and the evidence must have some indicia of reliability, *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987). The "some evidence" standard is not particularly stringent, and the relevant inquiry is whether "there is any evidence in the record that could support the conclusion reached...." *Hill*, 472 U.S. at 455-56.

802-03 (9th Cir. 1990). Although temporary confinement in administrative segregation typically does not implicate a protected liberty interest, imposition of an indeterminate term as a result of a disciplinary charge constitutes a much greater deprivation. *See Madrid*, 889 F.Supp. at 1271 ("defendants may not confine prison gang members in the SHU, nor hold them there on indeterminate terms, without providing them the quantum of procedural due process required by the Constitution.").

The decision to continue confinement of an inmate pending investigation of misconduct charges depends upon circumstances that prison officials will be well aware of—most typically, the progress of the investigation. *Hewitt v. Helms*, 459 U.S. 460, 477 n.9, 103 S. Ct. 864, 874, 74 L. Ed. 2d 675 (1983) (due process requirements for placement in administrative segregation), abrogated in part on other grounds by *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

In this case, Plaintiff alleges that he received notice of the 8/27/19 review hearing and was denied the opportunity to say anything of substance. However, he does not allege that he was denied the opportunity to present his views through a written statement or that the notice was insufficient. Given that his allegations do not demonstrate a violation of the *Hewitt* requirements, his Due Process claim fails. In addition, the Due Process claims are not properly joined with other unrelated claims.

### F.      False Rules Violation Report and Medical Report

It appears Plaintiff's main complaint is a Due Process violation for being falsely accused of improper conduct. In addition, Plaintiff claims that defendant Chand falsely reported Plaintiff's medical condition that Plaintiff would be able to tolerate placement in Ad-Seg.

Prisoners do not have a liberty interest in being free from false accusations of misconduct. The filing of a false Rules Violation Report by a prison official against a prisoner is not a per se violation of the prisoner's constitutional rights. *See Muhammad v. Rubia*, 2010 WL 1260425, at *3 (N.D. Cal., Mar. 29, 2010), aff'd, 453 Fed. App'x 751 (9th Cir. 2011) ("[A] prisoner has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. As long as a prisoner is afforded

procedural due process in the disciplinary hearing, allegations of a fabricated charge fail to state a claim under § 1983.") (citations omitted)

The creation of false evidence, standing alone, is not actionable under § 1983. See *Hernandez v. Johnston*, 833 F.2d 1316, 1319 (9th Cir. 1987) (independent right to accurate prison record has not been recognized); *Johnson v. Felker*, No. 1:12–cv–02719 GEB KJN (PC), 2013 WL 6243280, at *6 (E.D. Cal. Dec. 3, 2013) ("Prisoners have no constitutionally guaranteed right to be free from false accusations of misconduct, so the mere falsification of a report does not give rise to a claim under section 1983.") (citations omitted). Moreover, "plaintiff cannot state a cognizable Eighth Amendment violation based on an allegation that defendant[ ] issued a false rule violation against plaintiff." *Jones v. Prater*, No. 2:10-cv-01381 JAM KJN P, 2012 WL 1979225, at *2 (E.D. Cal. Jun. 1, 2012); *see also Youngs v. Barretto*, No. 2:16-cv-0276 JAM AC P, 2018 WL 2198707, at *3 (E.D. Cal. May 14, 2019) (noting that issuance of false rules violation report does not rise to the level of cruel and unusual punishment) (citations omitted).  Likewise, false medical reports do not give rise to a cognizable claim. *Evans v. Diaz*, No. 1:22-CV-00291 ADA BAM PC, 2022 WL 17417816, at *12 (E.D. Cal. Dec. 5, 2022) (failure to state a claim for fabricated medical reasoning in medical report*); Martin v. Pfeiffer,* No. 1:22-CV-00889 AWI BAM PC, 2022 WL 4345686, at *8 (E.D. Cal. Sept. 19, 2022), report and recommendation adopted, No. 1:22-CV 00889 AWI BAM PC, 2022 WL 17406535 (E.D. Cal. Dec. 2, 2022) (Plaintiff's complaint fails to state a claim based on allegations of a false medical injury report); *Sanford v. Eaton*, No. 1:20-CV-00792 BAM(PC), 2021 WL 1172911, at *7 (E.D. Cal. Mar. 29, 2021)(denying a claim alleging falsified medical report and statements made by Plaintiff), denying to adopt on other grounds, *Sanford v. Eaton*, No. 1:20-CV00792-JLT BAM(PC), 2022 WL 168530, at *2 (E.D. Cal. Jan. 19, 2022). False charges or false medical information are not cognizable claims.

### G.  Eighth Amendment

#### 1.  Excessive Force

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir.

2006). The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Hudson v McMillian*, 503 U.S. 1, 5 (1992) (citations omitted). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (quotations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is...whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. Not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* at 9. De minimis uses of physical force do not violate the constitution provided that the use of force is not of a sort "repugnant to the conscience of mankind." *Whitley v. Albers*, 475 U.S. 312, 327 (1986) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

For claims of excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Relevant factors for this consideration include "the extent of injury... [,] the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.' " *Id.* (quoting *Whitley v. Albers*, 475 U.S. 1078, 1085 (1986) ). Finally, because the use of force relates to the prison's legitimate penological interest in maintaining security and order, the court must be deferential to the conduct of prison officials. *See Whitley*, 475 U.S. at 321–22.

Use of Triangle

Plaintiff may be able to state a cognizable claim for excessive force.  Plaintiff alleges that the way he was cuffed was painful.  He alleges that asked Rosales, Tienda and Diaz to take off the triangle, but he does not allege how often he told them or if he told them he was in pain.  In addition, this claim is not properly joined with other unrelated claims.

Force used in Plaintiff's cell

Plaintiff may be able to state a claim for the force used by Scalia busting Plaintiff's nose,

and other officers who engaged in force, but this claim is improperly joined with other unrelated claims.

Attempted Suicide Incident on November 8, 2019

Plaintiff alleges he was pepper sprayed and otherwise beat up by Defendant White, Hernandez, Roacha and Acosta and other officers when Plaintiff was trying to committee suicide. Hernandez, Acosta, Moreno then chicken winged Plaintiff. Plaintiff may be able to state a claim, but this claim is improperly joined with other unrelated claims.

**2.  Failure to Intervene**

Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. *Farmer*, 511 U.S. at 832–33; *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005). "[A] prison official can violate a prisoner's Eighth Amendment rights by failing to intervene." *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995).

Use of Triangle

Plaintiff alleges that Dr. Wu, Alvarez, and RN Lewis saw that Plaintiff was in the triangle and hooked to the cage, but failed to take the triangle off.  Plaintiff fails to state that the medical defendant had authority to remove Plaintiff from the cage or remove the triangle.

Force used in Plaintiff's cell

Plaintiff may be able to state a claim for Rosales, Tienda and Diaz failure to stop the force which resulted in Plaintiff busted nose, but based on the current pleading, Plaintiff fails to state a cognizable claim.  Plaintiff does not allege that the officers were able to see what was happening and in a position to intervene during the brief incident. This claim is improperly joined with other unrelated claims.

Attempted Suicide Incident on November 8, 2019

Plaintiff alleges that Magallanes, Rodriguez and Herleman were watching but not acting when the officers were using force to stop Plaintiff's act of suicide.  Plaintiff may be able to state a claim, but this claim is improperly joined with other unrelated claims.

3.  **Deliberate Indifference to Medical Care**

A prisoner's claim of inadequate medical care does not constitute cruel and unusual

18

punishment in violation of the Eighth Amendment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,' " and (2) "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096. A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a high legal standard," *Simmons v. Navajo County, Ariz*, 609 F.3d 1011, 1019 (9th Cir. 2010); *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm. *Jett*, 439 F.3d at 1096.

Negligence or medical malpractice do not rise to the level of deliberate indifference. *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105-106). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *see also Anderson v. County of Kern*, 45 F.3d 1310, 1316 (9th Cir. 1995). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). Additionally, a prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

Further, a "difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (citing *Sanchez v. Vild*, 891 F.2d at 242, overruled in part on other grounds, *Peralta v. Dillard*, 744 F.3d 1076, 1082–83 (9th Cir. 2014); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122–23 (9th Cir. 2012)) (citing

*Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." *Snow*, 681 F.3d at 988 (citing *Jackson*, 90 F.3d at 332) (internal quotation marks omitted).

<u>August 20, 2019 Security Check by Tienda, Rosales and Alvarez</u>

Plaintiff alleges he told each person he was suicidal and they smirked, or said something derogatory or turned away from Plaintiff. Plaintiff may be able to state a cognizable claim against Tienda, but fails to state a claim against Rosales and Alvarez. Plaintiff should state additional factual support that each defendant knows of and disregards an excessive risk to inmate health or safety. Neither Alvarez's or Rosales' responses indicate a knowledge and disregard of the risk to Plaintiff. In addition, this claim is not properly joined with other unrelated claims.

<u>Dr. Rakash</u>

Plaintiff alleges that Plaintiff reported to Dr. Rakash Plaintiff's low energy, thoughts of death, panic attacks and other symptoms, and faults Dr. Rakash for not placing Plaintiff in the mental health crisis bed and "do nothing" and watch as Plaintiff decompensated. A difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim. Plaintiff fails to allege facts that any defendant "knows of and disregards an excessive risk to inmate health or safety." In addition, this claim is not properly joined with other unrelated claims.

<u>Chand and the ICC meeting</u>

Plaintiff alleges that Chand was his assigned clinician to represent Plaintiff's mental needs at the ICC. Chand did not meet with Plaintiff before the hearing, yet reported that Plaintiff could withstand being housed in Ad-Seg. A difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim. Plaintiff fails to allege facts that any defendant "knows of and disregards an excessive risk to inmate health or safety."

<u>Vu and Lewis</u>

Plaintiff alleges that Vu and Lewis did a mental evaluation, and Plaintiff told them that he

could not handle being in Ad-Seg and was suicidal.  Lewis examined Plaintiff and Vu admitted Plaintiff to the crisis bed, but changed his mind. A difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim. Plaintiff fails to allege facts that any defendant "knows of and disregards an excessive risk to inmate health or safety." Plaintiff's conclusory allegations that these defendant "know" Plaintiff would decompensate is conclusory. In addition, this claim is not properly joined with other unrelated claims.

### 4.  **Conditions of Confinement**

Plaintiff alleges that the triangle devices should not have been used because he was not combative or resistive and it is a punitive device.

To state an Eighth Amendment claim, Plaintiff must satisfy both the objective and subjective components of a two-part test. *See Wilson v. Seiter*, 501 U.S. 294, 298–99 (1991); *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002). First, he must allege Defendants deprived him of the " 'minimal civilized measure of life's necessities.' " *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) (quoting *Wilson,* 501 U.S. at 304). When determining whether an alleged deprivation is objectively sufficiently serious to support an Eighth Amendment claim, the court must consider the circumstances, nature, and duration of the deprivation. *Johnson v. Lewis*, 217 F.3d 726, 731–32 (9th Cir. 2000).

Second, Plaintiff must allege facts sufficient to plausibly show each Defendant he seeks to hold liable had a "sufficiently culpable mind." *Wilson*, 501 U.S. at 297. "In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citation omitted). That is, that the official must "kn[ow] of and disregard[ ] an excessive risk to inmate health or safety[.]" Id. at 837.

Plaintiff's allegation that he was chained using the triangle device and hooked to the cage where he could not sit for four hours does not rise to the level of a constitutional violation. Such temporarily unpleasant conditions of confinement do not rise to the level of constitutional violations. *See Anderson v. County of Kern*, 45 F.3d 1310 (9th Cir. 1995), citing *Hoptowit v. Ray*, 682 F.2d 1237, 1258 (9th Cir. 1982) (abrogated on other grounds by *Sandin v. Conner*, 515 U.S.

21

472 (1995)) (in evaluating challenges to conditions of confinement, length of time the prisoner must go without basic human needs may be considered). To be cognizable, temporary conditions of confinement must be severe or prolonged. "[R]outine discomfort inherent in the prison setting" does not rise to the level of a constitutional violation. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2006).

In addition, to state a claim for violation of the Eighth Amendment, Plaintiff must allege facts sufficient that each prison official knew of and disregarded a substantial risk of serious harm to the plaintiff.  Moreover, this claim is improperly joined with unrelated claims.

### H.  First Amendment - Retaliation

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009)). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). "[T]he mere threat of harm can be an adverse action...." *Brodheim*, 584 F.3d at 1270. A plaintiff must plead facts showing that their "protected conduct was the substantial or motivating factor behind the defendant's conduct." *Id.* at 1271. To state a cognizable retaliation claim, Plaintiff must establish a nexus between the retaliatory act and the protected activity. *Grenning v. Klemme*, 34 F. Supp. 3d 1144, 1153 (E.D. Wash. 2014).

Although the allegations are unclear, Plaintiff claims he engaged in protected conduct of seeking mental health treatment and saying he would file a grievance and that numerous things were done in retaliation: the triangle handcuff, being tied to a cage, force by officers. He alleges that on a different date, November 6 or 7, 2019, he was threatened in retaliation for receiving mental health treatment in the crisis bed. As currently pled, Plaintiff fails to set forth sufficient factual allegations to support a claim of retaliation. The allegations are unclear that Plaintiff engaged in protected conduct for which he was retaliated because he jumbles all conduct together

and refers to it as retaliation. Plaintiff fails to allege that the adverse action chilled Plaintiff's First Amendment rights and that it did not reasonably advance a legitimate correctional goal. Plaintiff's conclusory allegations as to the many incidents are insufficient to state a claim. Further, this claim is improperly joined with other unrelated claims.

## I.   Equal Protection

The Equal Protection Clause requires the State to treat all similarly situated people equally. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). This does not mean, however, that all prisoners must receive identical treatment and resources. *See Cruz v. Beto*, 405 U.S. 319, 322 n. 2, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); *Ward v. Walsh*, 1 F.3d 873, 880 (9th Cir. 1993); *Allen v. Toombs*, 827 F.2d 563, 568–69 (9th Cir. 1987).

"To prevail on an Equal Protection claim brought under § 1983, Plaintiff must allege facts plausibly showing that ' "the defendants acted with an intent or purpose to discriminate against [them] based upon membership in a protected class,' " (citing *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005)) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001)), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose*, Engquist v. Oregon Department of Agr.,* 553 U.S. 591, 601-02, 128 S.Ct. 2146, 170 L.Ed.2d 975 (2008); *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000); *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008); *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008).

Plaintiff challenges how Tienda, Diaz, Scalia, White, Hernandez, and Moreno treat African American inmates.  Plaintiff has not stated a cognizable equal protection claim. Plaintiff does not allege that he was discriminated against because of his membership in any protected class. He also does not allege factual support that he was intentionally treated differently than other similarly situated inmates without a rational relationship to a legitimate state purpose. Plaintiff has not provided any factual support for this claim. *Fletcher v. Clendenin*, No. 1:22-CV-00249 AWI BAM, 2022 WL 2791480, at *5 (E.D. Cal. July 15, 2022) (Equal Protection claim

23

1  dismissed for failure to allege factual support for denial of treatment based on membership in a

2  protected class). Plaintiff cannot challenge the treatment of other inmates in this §1983 action.

3  **J.       Violation of Consent Decrees**

4         It is unclear whether Plaintiff is claiming that Defendants have violated any consent

5  decrees, such as in the *Coleman* case. To the extent Plaintiff contends that Defendants have failed

6  to comply with any remedial order in these cases, his claim fails.

7         It is well-settled that the remedial order issued in *Coleman* and relate cases does not

8  provide an independent cause of action under § 1983 as the order does not create or expand on a

9  plaintiff's constitutional rights. *Coleman v. CDCR*, No. 09-cv-02192-SKO PC, 2011 WL

10  2619569, at *4 (E.D. Cal. July 1, 2011) (citing *Cagle v. Sutherland*, 334 F.3d 980, 986-87 (9th

11  Cir. 2003) (consent decrees often go beyond constitutional minimum requirements, and do not

12  create or expand rights)); *see also Green v. McKaskle*, 788 F.2d 1116, 1123 (5th Cir. 1986)

13  (remedial decrees remedy constitutional violations but do not create or enlarge constitutional

14  rights and cannot serve as a substantive basis for damages); *Montecastro v. Newsom*, No. 1:20-

15  CV-00689 SAB(PC), 2020 WL 6484097, at *5 (E.D. Cal. Nov. 4, 2020) ("[A]ny violations of the

16  remedial plan developed in *Armstrong* do not provide an independent basis for relief in this court.

17  Violations of the *Armstrong* Remedial Plan must be addressed through the procedures provided

18  by that plan."), report and recommendation adopted, No. 1:20-CV-00689 NONE SAB (PC), 2020

19  WL 7319423 (E.D. Cal. Dec. 11, 2020). If Plaintiff has concerns about the actions under the

20  *Plata/Armstrong/Coleman* consent decrees, he should express those concerns to the class

21  representative or court in those cases.

22  **K.  Title 15 and Policy Violation**

23         To the extent that any Defendant has not complied with applicable state statutes or prison

24  regulations for failure to follow procedures, these deprivations do not support a claim under

25  §1983. Section 1983 only provides a cause of action for the deprivation of federally protected

26  rights. *See e.g.*, *Nible v. Fink*, 828 Fed. Appx. 463 (9th Cir. 2020) (violations of Title 15 of the

27  California Code of Regulations do not create private right of action); *Nurre v. Whitehead*, 580

28  F.3d 1087, 1092 (9th Cir. 2009) (section 1983 claims must be premised on violation of federal

constitutional right); *Prock v. Warden*, No. 1:13-cv-01572-MJS (PC), 2013 WL 5553349, at *11–12 (E.D. Cal. Oct. 8, 2013) (noting that several district courts have found no implied private right of action under title 15 and stating that "no § 1983 claim arises for [violations of title 15] even if they occurred."); *Parra v. Hernandez*, No. 08cv0191-H (CAB), 2009 WL 3818376, at *3 (S.D. Cal. Nov. 13, 2009) (granting motion to dismiss prisoner's claims brought pursuant to Title 15 of the California Code of Regulations); *Chappell v. Newbarth*, No. 1:06-cv-01378-OWW-WMW (PC), 2009 WL 1211372, at *9 (E.D. Cal. May 1, 2009) (holding that there is no private right of action under Title 15 of the California Code of Regulations); *Tirado v. Santiago*, No. 1:22-CV-00724 BAM PC, 2022 WL 4586294, at *5 (E.D. Cal. Sept. 29, 2022), report and recommendation adopted, No. 1:22-CV-00724 JLT BAM PC, 2022 WL 16748838 (E.D. Cal. Nov. 7, 2022) (same).

### L. Verbal Harassment

Plaintiff fails to state a cognizable claim for threats.  Allegations of name-calling, verbal abuse, or threats generally fail to state a constitutional claim under the Eighth Amendment, which prohibits cruel and unusual punishment. *See Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996) ("[V]erbal harassment generally does not violate the Eighth Amendment."), opinion amended on denial of reh'g, 135 F.3d 1318 (9th Cir. 1998); see *also Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987) (holding that a prisoner's allegations of threats allegedly made by guards failed to state a cause of action). Even in cases concerning "abusive language directed at [a plaintiff's] religious and ethnic background, 'verbal harassment or abuse is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983.' " *Freeman v. Arpaio*, 125 F.3d 732, 738 (9th Cir. 1997) (quoting *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987)) (alterations omitted), abrogated on other grounds by *Shakur v. Schriro*, 514 F.3d 878 (9th Cir. 2008). However, verbal harassment may violate the constitution when it is "unusually gross even for a prison setting and [is] calculated to and [does] cause [plaintiff] psychological damage." *Cox v. Kernan*, 2019 WL 6840136, at *5 (E.D. Cal. Dec. 16, 2019) (alterations in original) (quoting Keenan, 83 F.3d 1083 at 1092).

///

25

1    **IV.    Conclusion**

2        As discussed above, the Court finds Plaintiff's complaint fails to comply with Rules 8, 18,

3    and 20, and that he has not stated a cognizable claim for relief. Plaintiff will be granted an

4    opportunity to amend to attempt to cure the identified deficiencies, to the extent he is able to do

5    so in good faith.  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

6        Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what

7    each named defendant did that led to the deprivation of Plaintiff's constitutional rights, *Iqbal*, 556

8    U.S. at 678-79, 129 S. Ct. at 1948-49.  Although accepted as true, the "[f]actual allegations must

9    be [sufficient] to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555

10   (citations omitted).

11       Additionally, Plaintiff may not change the nature of this suit by adding new, unrelated

12   claims in his second amended complaint. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no

13   "buckshot" complaints). Plaintiff must decide which related claims he wishes to pursue in this

14   action and which claim he will pursue in a separate action. If Plaintiff's amended complaint

15   continues to improperly join claims and defendants, the Court will choose which cognizable

16   claims, if any, that Plaintiff may pursue. Any amended complaint shall be **limited to 25 pages** in

17   length, including exhibits. Plaintiff may not join unrelated claims.

18       Finally, Plaintiff is advised that an amended complaint supersedes the original complaint.

19   *Lacey v. Maricopa Cty.,* 693 F.3d 896, 927 (9th Cir. 2012). Therefore, Plaintiff's amended

20   complaint must be "complete in itself without reference to the prior or superseded pleading."

21   Local Rule 220.

22       Based on the foregoing, it is HEREBY ORDERED that:

23       1.    The Clerk's Office shall send Plaintiff a complaint form;

24       2.    Within **thirty (30) days** from the date of service of this order, Plaintiff shall file a

25   first amended complaint curing the deficiencies identified by the Court in this order, or file a

26   notice of voluntary dismissal;

27       3.    Any amended complaint shall be **limited to 25 pages** in length, including exhibits;

28   and

4.     If Plaintiff fails to file an amended complaint in compliance with this order, the Court will recommend dismissal of this action, with prejudice, consistent with the reasons discussed in this order.

IT IS SO ORDERED.

Dated:   **January 18, 2023**                     /s/ *Barbara A. McAuliffe*
                                                        UNITED STATES MAGISTRATE JUDGE