# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARQUISE DEANGELO LOFTIS,<br><br>        Plaintiff,<br><br>   v.<br><br>ARISCO, *et al.*,<br><br>        Defendants. | Case No. 1:22-cv-01266-JLT-BAM (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS<br><br>ECF No. 14<br><br>**FOURTEEN DAY DEAD-LINE** |

Plaintiff Marquise DeAngelo Loftis ("Plaintiff") is a state prisoner proceeding *pro se* in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff has paid the filing fee. The Court screened Plaintiff's complaint, and he was granted leave to amend. Plaintiff's first amended complaint, filed on April 21, 2023, is currently before he Court for screening. (ECF No. 14.)

**I.    Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

1

conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

**II.     Plaintiff's Allegations**

Plaintiff is currently housed at the R.J. Donovan Correctional Facility in San Diego, California.  Plaintiff alleges the events in this action arose while Plaintiff was housed at California State Prison in Corcoran, California ("Corcoran").  Plaintiff names the following defendants: (1) A. Arisco, Investigative Services Unit, (2) D. Sanchez, Captain, (3) Tienda, correctional officer, (4) Alvarez, psych tech, IC, (5) Diaz, correctional officer, IC, (6) Rosales, correctional officer, IC, (7) Navarro, sergeant, IC, (8) Vu, psychologist, IC, (9) Lewis, registered nurse, IC, (10) J. Scalia, correctional officer, IC.

In claim 1, Plaintiff alleges an Eighth Amendment claim for inadequate medical and mental health treatment. On August 20, 2019, Plaintiff was housed in Administrative Segregation ("ASU") awaiting the conclusion of an investigation of him. Plaintiff began to feel suicidal because of the stress of ASU and the investigation.  During breakfast, Plaintiff reported to Tienda that he was suicidal and planned to hang himself.  Tienda stated to Plaintiff, "I don't see you hanging," and walked away from Plaintiff's cell without activating suicidal prevention protocols to remove Plaintiff from his cell, and call mental health clinicians to interview and treat Plaintiff.

Alvarez came to Plaintiff's door to give him medication and Plaintiff reported that he was suicidal and wanted to talk to a clinician.  She stated "I'm suicidal too," mocking Plaintiff. Plaintiff could see Alvarez in her office coming in and out and Plaintiff would yell that he was

1  suicidal and would start harming himself.  She acknowledged Plaintiff but refused to act. Based
2  on information and belief, Defendant wanted Plaintiff to harm himself. She is trained and Plaintiff
3  reported that he was suicidal and said he would harm himself, she had an obligation to take it as
4  true and report to custody so Plaintiff could be removed from his cell.  She was obligated to
5  report to a clinician Plaintiff's actions and have a clinician observe Plaintiff.

6        Rosales switched off from Tienda to conduct security checks, every 20-30 minutes.  On
7  the checks, Plaintiff was waiting by his door to make sure Rosales heard Plaintiff report that he
8  was suicidal and would kill himself if he was not taken out of the cell and allowed to talk to a
9  doctor.  Rosales acknowledged Plaintiff, smirked and walked away.  Plaintiff estimates that
10 Tienda, Alvarez and Rosales ignored Plaintiff and let him in the cell to harm himself for 2.5
11 hours.  Plaintiff was finally taken out of his cell when he was able to yell to a passing clinician
12 that he was suicidal and she had him taken out of the cell.

13       In claim 2, Plaintiff alleges an Eighth Amendment claim for excessive force.  Diaz and
14 Rosales removed Plaintiff from his cell and put him in a holding cell for being suicidal.  Rosales
15 opened the tray slot on the cell door and handcuffed Plaintiff.  He opened the door and Diaz put a
16 triangular device on the cuffs.  The triangle is a device shaped like a triangle at the base and at the
17 top there is a 2-foot linked chain that connects to handcuffs.  The device is typically used on
18 combative and resistive inmates.  Plaintiff saw from Diaz's and Rosales's facial expression that
19 they were angry or annoyed with Plaintiff.  They walked Plaintiff to a holding cage and once
20 inside, his cuffed hands were pulled out of the handcuff slot and Plaintiff's hands and arms were
21 chained to the cage in an elevated position that prevented Plaintiff from sitting. His hands and
22 arms were in a bad position and after about 30 minutes of elevating, the handcuffs and chaining
23 was causing Plaintiff excruciating pain.  He remained in this position for four hours.  Throughout
24 this time, he said to Tienda and Rosales multiple times as they walked by the cage if they would
25 unchain him because he was in a lot of pain and Plaintiff begged to have his arms unchained.
26 Tienda stated you are the one that said you were suicidal.  Plaintiff took this to mean punishment.
27 During security check Plaintiff again told Rosales and Diaz he was in a lot of pain and they
28 acknowledge Plaintiff but would only smirk.  At one point, Rosales and Diaz brought two other

3

1  inmates to the cages beside Plaintiff because they reported being suicidal and Rosales and Diaz
2  did not put the triangle on these inmates and did not chain them to cage. At this point, Plaintiff
3  was crying in pain and asked them to unchain him.
4        Navarro came to the holding cage to talk to one of the other inmates. Plaintiff stopped
5  him to talk to Plaintiff. Plaintiff was still crying in pain and Plaintiff reported that the chaining
6  was causing severe pain and asked for it to be removed. Navarro said "what did you do to my
7  officers" and refused to remove the chains even though he had the keys and authority to do so. It
8  is against CDCR policy to chain an inmate to a cage for hours.
9        When Alvarez came for medication pass about 10 a.m., Plaintiff told her he was in a lot of
10 pain and asked her to report the abuse to the lieutenant. She told plaintiff that she would not get
11 involved as it was an issue between Plaintiff and the officers. She had an obligation to report
12 inmate abuse and could have reported it to the proper prison official.
13       Sanchez arrived within hours of when Plaintiff was first chained to the cage. Plaintiff
14 reported that he had been chained for a long time and was in excruciating pain. He said he did
15 not do anything to warrant being put in the triangle and if she could take it off. She said she
16 would have Navarro take it off. She was the highest ranking official and could have had it take
17 off. She knew that CDCR policy prohibited chaining inmates to cages.
18       After about 4 hours being chained to the cage, Vu and Lewis arrived to do a mental health
19 and medical evaluation of Plaintiff. Plaintiff report he was in a lot of pain as he was chained for
20 hours. Plaintiff reported that his arms, hands, back and wrist were in extreme pain and asked for
21 them to contact a supervisor. Vu and Lewis appeared that he did not want to get involved even
22 though Plaintiff was in distress. They did not report Plaintiff's distress or attempt to render any
23 medical treatment. Vu and Lewis had the authority to have the chains and handcuffs removed.
24       In claim 3, Plaintiff alleges that Defendant Navarro authorized Defendant Rosales and
25 Diaz to use the triangle on Plaintiff, because use of the triangle requires supervisor approval.
26 Plaintiff alleges Navarro acted in concert with his subordinates in that he knew that they had
27 intentions to punish Plaintiff for reporting them to the doctor and that plaintiff was suicidal.
28 Plaintiff alleges that Navarro refused to unchain Plaintiff or have his subordinates do so even

1  though they knew Plaintiff was in excruciating pain and knew it was a violation of the regulations
2  to chain Plaintiff to a cage.

3      Plaintiff alleges that Sanchez is liable in her supervisory role because she personally
4  witnessed Plaintiff being subjected to cruel and unusual punishment.  Plaintiff reported to her that
5  he was in pain and the he had been chained to the cage for a long time. She could see he was in
6  the cage would not be a danger to anyone and keeping him chained was excessive.  She had
7  authority over Navarro, Rosales, Diaz and others to have Plaintiff unchained or she could have
8  done so but she did not.

9      In claim 4, Plaintiff alleged denial of mental health treatment. Defendant Vu and Lewis
10 arrived to do a mental health evaluation of Plaintiff.  Navarro was also present.  Plaintiff reported
11 that he was extremely stressed and anxious about being in ASU and he planned to commit suicide
12 by hanging or cutting himself.  He reported he was having panic attacks and had been banging
13 his head resulting in swelling and had made a noose with his bed sheet.  He said he had begun
14 testing the noose.  Vu gave Navarro his diagnosis that when Plaintiff get agitated he engages in
15 self-harm and would likely hurt himself if put back in his cell.  Vu concluded they had to admit
16 Plaintiff to the crisis bed.

17     Navarro was angry and became aggressive toward Vu and told Vu in an aggressive tone,
18 "you guys always give these guy what they want.  He's just trying to get out of the hole." Navarro
19 asked Vu to step to the side and Plaintiff could hear Navarro telling Vu and Lewis that Plaintiff
20 had only been in ASU overnight and he needed to "man up."  Lewis walked to Plaintiff's cell
21 with Tienda and she looked inside and pointed then walked back to Navarro and Vu and reported
22 the Plaintiff had a noose tied to the upper bunk area.  Tienda entered and cut the noose down and
23 brought it outside of the cell.  Vu returned to the cage and told Plaintiff that Vu was no longer
24 going to send Plaintiff the mental health crisis bed and that Plaintiff should try to use his coping
25 skills instead of self-harm.

26     Navarro interfered with Plaintiff's mental health treatment and got Plaintiff denied
27 treatment despite a high chance that plaintiff was going to commit suicide.  Vu and Lewis were
28 deliberately indifferent to Plaintiff's serious mental health need and failed to admit Plaintiff to the

5

mental health crisis bed.  As a result, Plaintiff continued to do self-harm.

       In claim 5, Plaintiff alleges excessive force. As a result of Navarro getting Plaintiff denied mental health treatment, Plaintiff told Navarro that Plaintiff was going to file a grievance against him and requested forms. Navarro had Tienda and Diaz assault Plaintiff as Navarro watched. Tienda and Diaz interlocked their arms under Plaintiff's shoulder and then jacked his handcuffs upward cause Plaintiff excruciating pain to Plaintiff's shoulders, arms, hands and Plaintiff screamed in pain.  Diaz threatened Plaintiff and said, "it will be hard to file a 602 with two broken hands." Tienda and Diaz walked Plaintiff back to his cell and Tienda went inside and took all of his bedding.  Plaintiff was frustrated and cold so he began kicking the door and banging his head on the door for a long period.  When Scalia came to conduct a security check, Plaintiff was still banging his head on the door and told plaintiff that if he did not stop banging his head, the nurse would come and give Plaintiff a shot.  Plaintiff continued banging his head on the door.

       Scalia, Rosales, Tienda and Diaz converged on Plaintiff's cell and Diaz had the control tower officer to open Plaintiff's door.  Plaintiff was standing at the door but somewhat stepped behind the door frame.  In full view of the other defendants, Scalia stepped inside and grabbed Plaintiff by the front of his shirt and told Plaintiff "didn't I tell you to stop hitting the fucking door."  He punched Plaintiff's face, a couple times busting Plaintiff's nose.  Plaintiff yelled for help and asked for medical treatment. Scalia said that if Plaintiff wanted to report it that Scalia would claim an "emergency cell extraction."  Plaintiff was afraid of getting more prison time and did not report the attack or get medical treatment. Rosales, Tienda and Diaz had the full ability to stop Scalia from attacking Plaintiff but they refused to intervene. They all knew that Plaintiff was going to get assaulted before they even opened the door.  The other named defendants provided cover and back up for Scalia presumably if Plaintiff had struck back and they were in agreement with Scalia when he treatment to press false charges again Plaintiff if he reported the assault.

       In claim 6, Plaintiff alleges that Rosales and Diaz put the triangle on Plaintiff for reporting to the clinician that Plaintiff was suicidal, because Tienda, Alvarez and Rosales refused to get him help. They had no intention of taking him out until forced to do so by the clinician.  Plaintiff has a protected right to seek medical attention and was punished by all defendants for doing so.  They

6

chilled Plaintiff from seeking treatment again.  Plaintiff alleges that Navarro sanctioned the retaliation by approving the use of the triangle and by his behavior when the triangle was on.  Plaintiff alleges that Navarro had Tienda and Diaz assault Plaintiff because Plaintiff was going to file a grievance against Navarro for interfering with Plaintiff's mental health treatment.  The assault and threat was to intimidate Plaintiff to not file a grievance.

As remedies, Plaintiff seeks compensatory and punitive damages.

**III.    Discussion**

**A.    Federal Rule of Civil Procedure 8**

Pursuant to Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  While factual allegations are accepted as true, legal conclusions are not.  *Id.*; *see also Twombly*, 550 U.S. at 556–57; *Moss*, 572 F.3d at 969.

Here, Plaintiff's complaint is not short. Much of Plaintiff's allegations is conclusory as toe what happened, when it happened, or which defendant was involved.  General assertions regarding who knew what about Plaintiff are not sufficient.  Further, and more problematic, Plaintiff improperly joins claims.

**B.    Federal Rules of Civil Procedure 18 and 20**

Plaintiff may not bring unrelated claims against unrelated parties in a single action.  Fed. R. Civ. P. 18(a), 20(a)(2); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *Mackey v. Price*, 2020 WL 7319420, at *3–4 (E.D. Cal. Dec. 11, 2020), report and recommendation adopted, 2021 WL 843462 (E.D. Cal. Mar. 5, 2021).  Plaintiff may bring a claim against multiple defendants so long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are

commons questions of law or fact.  Fed. R. Civ. P. 20(a)(2); *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997).  The "same transaction" requirement refers to similarity in the factual background of a claim.  *Id.* at 1349.  Only if the defendants are properly joined under Rule 20(a) will the Court review the other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party.

Plaintiff may not raise different claims against different defendants in a single action. For instance, Plaintiff may not state unrelated claims for his Ad-Seg housing, excessive force (the triangle and cage placement), false reports, medical care, retaliation, and deliberate indifference while in Ad-Seg and many other claims.  Unrelated claims involving multiple defendants belong in different suits.  The complaint is a series of multiple incidents which happened while Plaintiff was housed in Ad-Seg. Merely because Plaintiff was housed in Ad-Seg when the incidents occurred does not make every injury or incident related.  As the Court previously informed Plaintiff, if unrelated claims are joined, the Court will select which cognizable claim may proceed. Separate unrelated claims must be filed in separate lawsuits.  The Court declines to expend its scarce resources screening improperly joined claims.

### C.     Supervisory Liability

To the extent Plaintiff seeks to hold any defendant liable based solely upon their supervisory role, he may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676–77; *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (citation and quotation marks omitted); *accord Lemire v. Cal. Dep't of Corrs. & Rehab.*, 726 F.3d 1062, 1074–75 (9th Cir. 2013); *Lacey v. Maricopa Cty.,* 693 F.3d 896, 915–16 (9th Cir. 2012) (en banc). "Under the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient

that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." *Crowley*, 734 F.3d at 977 (citing *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)) (internal quotation marks omitted).

### D. Eighth Amendment

#### 1. **Deliberate Indifference to Medical Care**

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment in violation of the Eighth Amendment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,' " and (2) "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096. A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a high legal standard," *Simmons v. Navajo County, Ariz*, 609 F.3d 1011, 1019 (9th Cir. 2010); *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm. *Jett*, 439 F.3d at 1096.

Negligence or medical malpractice do not rise to the level of deliberate indifference. *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105-106). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *see also Anderson v. County of Kern*, 45 F.3d 1310, 1316 (9th Cir. 1995). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). Additionally, a prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate

indifference. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

Further, a "difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (citing *Sanchez v. Vild*, 891 F.2d at 242, overruled in part on other grounds, *Peralta v. Dillard*, 744 F.3d 1076, 1082–83 (9th Cir. 2014); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122–23 (9th Cir. 2012)) (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." *Snow*, 681 F.3d at 988 (citing *Jackson*, 90 F.3d at 332) (internal quotation marks omitted).

<u>August 20, 2019 Security Check by Tienda, Rosales and Alvarez</u>

In claim 1, Plaintiff alleges he told each Tienda, Alvarez and Rosales he was suicidal and they smirked, or said something derogatory or turned away from Plaintiff.

There is no allegation that any purported indifference caused harm. *Jett*, 439 F.3d at 1096 (the indifference must have caused harm). Plaintiff's allegations are such that he alleges the defendants must believe him because he told them he was suicidal, but the allegations are without any factual support that would have alerted the officers that Plaintiff was seriously contemplating suicide. Indeed, Plaintiff seems to complain they did not act according to CDCR policy in that he was not placed in the crisis bed, instead of Ad-Seg. He does not allege their conduct caused him harm. In addition, this claim is not properly joined with other unrelated claims.

<u>Vu, Lewis and Navarro</u>

In claim 4, Plaintiff alleges that Vu and Lewis did a mental evaluation, and Plaintiff told them that he could not handle being in Ad-Seg and was suicidal. Lewis examined Plaintiff and Vu admitted Plaintiff to the crisis bed, but changed his mind. A difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim. Plaintiff fails to allege facts that any defendant "knows of and disregards an excessive risk to inmate health or safety. At most, these allegations demonstrate a difference of opinion between a physician and a prisoner. In addition, this claim is not properly

10

joined with other unrelated claims.

Plaintiff alleges that Defendant Navarro interfered with Plaintiff's medical care by talking to Defendant Vu and Lewis. Plaintiff fails to state a cognizable claim and this claim is improperly joined. The Court declines to expend its scarce resources screening an improperly joined claim.

### 2. Excessive Force/Failure to Protect

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Hudson v McMillian*, 503 U.S. 1, 5 (1992) (citations omitted). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (quotations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is...whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. Not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* at 9. De minimis uses of physical force do not violate the constitution provided that the use of force is not of a sort "repugnant to the conscience of mankind." *Whitley v. Albers*, 475 U.S. 312, 327 (1986) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

For claims of excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Relevant factors for this consideration include "the extent of injury... [,] the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.' " *Id.* (quoting *Whitley v. Albers*, 475 U.S. 1078, 1085 (1986) ). Finally, because the use of force relates to the prison's legitimate penological interest in maintaining security and order, the court must be deferential to the conduct of prison officials.

*See Whitley*, 475 U.S. at 321–22.

Prison officials also have a duty to protect prisoners from violence at the hands of other prisoners or from other dangerous conditions. *See Farmer v. Brennan*, 511 U.S. 825, 834, 836, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (for an Eighth Amendment failure-to-protect claim, the plaintiff must show the deprivation alleged was "objectively, sufficiently serious" and the defendant was deliberately indifferent to a "substantial risk of serious harm" (citation and internal quotation marks omitted)). The failure of prison officials to protect inmates from attacks by other inmates or from dangerous conditions at the prison violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is, subjectively, deliberately indifferent to inmate health or safety. Id. at 834. A prison official is deliberately indifferent if he knows of and disregards an excessive risk to inmate health or safety by failing to take reasonable steps to abate it. *Id.* at 837.

### Use of Triangle

In claim 2, Plaintiff alleges improper use of and excessive force in the triangle and that the officers failed to protect. Plaintiff fails to state a claims for the placement of the triangle on Plaintiff.  Plaintiff does not have a constitutional right to be secured by a particular device.  Similarly, Plaintiff fails to state a claim for placement in the cage and chained to the cage at an elevated position.  Plaintiff does not have a constitutional right to be chained in a particular fashion.

Plaintiff states a cognizable claim excessive force/failure to protect because Plaintiff alleges that the way he was cuffed and the duration was painful.  Plaintiff alleges a claim against Rosales, Tienda and Diaz for failure to take off the triangle after repeatedly telling each of them he was in excruciating pain.

Plaintiff fails to state a cognizable claim for failure to intervene against Navarro, Sanchez, Dr. Wu, Alvarez, and RN Lewis.  Plaintiff alleges that Navarro, Sanchez, Dr. Wu, Alvarez, and RN Lewis saw that Plaintiff was in the triangle and hooked to the cage, but failed to take the triangle off.  Plaintiff's conclusory allegations that the medical defendant had authority to remove Plaintiff from the cage or remove the triangle are insufficient.  Plaintiff fails to state a claim

against Sanchez, because Sanchez reported to Plaintiff she would have a subordinate remove the chains. This is not deliberate indifference. Plaintiff fails to state a cognizable claim against Alvarez because there is no factual allegations that Alvarez had authority to remove Plaintiff from the cage or remove the triangle. Plaintiff fails to state a claim against Defendant Navarro for failure to intervene. Although Plaintiff alleges that the he told Navarro Plaintiff was in pain, there is no allegation that Navarro knew how long Plaintiff was chained or that Plaintiff asked Navarro more than once to remove the chains. The claims against Rosales, Tienda and Diaz will be allowed to proceed.

<u>Force used in Plaintiff's cell</u>

In claim 5, Plaintiff alleges a separate incident of excessive force against Tienda and Diaz and failure to intervene by Navarro. Plaintiff also alleges a separate use of force incident by Scalia and failure to intervene by Rosales, Tienda and Diaz.

Pursuant to Rules 18, Plaintiff may join claims he has against an opposing party. Plaintiff states a cognizable claim for excessive force against Tienda and Diaz for Tienda and Diaz when they interlocked their arms under Plaintiff's shoulder and then jacked his handcuffs upward causing Plaintiff excruciating pain to Plaintiff's shoulders, arms, hands, and Plaintiff screamed in pain. In addition, liberally construing the allegations, Plaintiff states a cognizable failure to intervene claim against Navarro.

As to the remaining allegations in claim 5 against Scalia, Rosales, Tienda and Diaz, involving a separate incident, the Court finds this claim is improperly joined with other unrelated claims. In the interest of judicial economy and prejudice to these defendants, the Court will not permit the claims against Scalia, Rosales, Tienda and Diaz, involving a separate incident to go forward in this action. Permitting this claim to proceed will create a litigation morass and will be unwieldy joinder of claims. Fed.R.Civ. P. 18, 21. The claims will be dismissed without prejudice, and the claims may be filed in a separate action.

**F. First Amendment - Retaliation**

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012)

(citing *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009)). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). "[T]he mere threat of harm can be an adverse action...." *Brodheim*, 584 F.3d at 1270. A plaintiff must plead facts showing that their "protected conduct was the substantial or motivating factor behind the defendant's conduct." *Id.* at 1271. To state a cognizable retaliation claim, Plaintiff must establish a nexus between the retaliatory act and the protected activity. *Grenning v. Klemme*, 34 F. Supp. 3d 1144, 1153 (E.D. Wash. 2014).

In claim 6, Plaintiff claims he engaged in protected conduct of seeking mental health treatment and saying he would file a grievance and that numerous things were done in retaliation: the triangle handcuff, force by officers, all at the direction of Defendant Navarro. Plaintiff states a cognizable claim against Defendant Navarro for retaliation where "he had Tienda and Diaz assault him" in the cell by chicken winging Plaintiff because Plaintiff was going to file a grievance against Navarro.

### E. Title 15 and Policy Violation

To the extent that any Defendant has not complied with applicable state statutes or prison regulations for failure to follow procedures, these deprivations do not support a claim under §1983. Section 1983 only provides a cause of action for the deprivation of federally protected rights. *See e.g.*, *Nible v. Fink*, 828 Fed. Appx. 463 (9th Cir. 2020) (violations of Title 15 of the California Code of Regulations do not create private right of action); *Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir. 2009) (section 1983 claims must be premised on violation of federal constitutional right); *Prock v. Warden*, No. 1:13-cv-01572-MJS (PC), 2013 WL 5553349, at *11–12 (E.D. Cal. Oct. 8, 2013) (noting that several district courts have found no implied private right of action under title 15 and stating that "no § 1983 claim arises for [violations of title 15] even if they occurred."); *Parra v. Hernandez*, No. 08cv0191-H (CAB), 2009 WL 3818376, at *3 (S.D.

Cal. Nov. 13, 2009) (granting motion to dismiss prisoner's claims brought pursuant to Title 15 of the California Code of Regulations); *Chappell v. Newbarth*, No. 1:06-cv-01378-OWW-WMW (PC), 2009 WL 1211372, at *9 (E.D. Cal. May 1, 2009) (holding that there is no private right of action under Title 15 of the California Code of Regulations); *Tirado v. Santiago*, No. 1:22-CV-00724 BAM PC, 2022 WL 4586294, at *5 (E.D. Cal. Sept. 29, 2022), report and recommendation adopted, No. 1:22-CV-00724 JLT BAM PC, 2022 WL 16748838 (E.D. Cal. Nov. 7, 2022) (same).

### IV. Conclusion and Recommendation

Based on the above, the Court finds that Plaintiff's first amended complaint states cognizable claims for excessive force/failure to protect against Defendants Rosales, Tienda and Diaz in violation of the Eighth Amendment (claim 2), excessive force against Defendants Tienda and Diaz in violation of the Eighth Amendment (claim 5), failure to intervene against Defendant Navarro in violation of the Eighth Amendment (claim 5), and retaliation against Defendant Navarro (claim 6) in violation of the First Amendment (claim 6). However, Plaintiff's complaint fails to state any other cognizable claims for relief against any other Defendants or includes improperly joined claims. Despite being provided with the relevant pleading and legal standards, Plaintiff has been unable to cure the identified deficiencies and further leave to amend is not warranted. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, it is HEREBY RECOMMENDED that:

1. This action proceed on Plaintiff's first amended complaint, filed on April 20, 2023, (ECF No. 14), for excessive force/failure to protect against Defendants Rosales, Tienda and Diaz in violation of the Eighth Amendment (claim 2), excessive force against Defendants Tienda and Diaz in violation of the Eighth Amendment (claim 5), failure to intervene against Defendant Navarro in violation of the Eighth Amendment (claim 5), and retaliation against Defendant Navarro (claim 6) in violation of the First Amendment (claim 6); and

2. All other claims and defendants be dismissed based on Plaintiff's failure to state claims upon which relief may be granted and/or improperly joined claims.

* * *

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __May 11, 2023__                    /s/ Barbara A. McAuliffe _
                                             UNITED STATES MAGISTRATE JUDGE